**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MAUREEN RILEY,**

       **Plaintiff,**

                                 **Civil Action 2:12-cv-628**
   **v.**                           **Judge Algenon L. Marbley**
                                 **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

**REPORT AND RECOMMENDATION**

      Plaintiff, Maureen Riley, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her application for

social security disability insurance benefits.  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the

Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF

No. 8).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE**

Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

# I.    BACKGROUND[1]

Plaintiff filed her application for benefits on July 18, 2007, alleging that she has been disabled since June 12, 2006, at age 53.  (R. at 86-95.)  Plaintiff alleges disability as a result of chest wall pain, herniated disc, fibromyalgia, chronic obstructive pulmonary disease ("COPD"), rheumatoid arthritis, costrochondritis, back and neck pain, stenosis of the spine, Graves' disease, sleep apnea, and degenerative disc disease.  (R. at 106.)  Plaintiff subsequently completed a Symptom Report in September 2007.  In this Report, Plaintiff indicated that her symptoms included "pain, fatigue, weakness, shortness of breath, numbness, chest wall pain, impaired concentration, [and] memory loss."  (R. at 138-40.)  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.

Administrative Law Judge Timothy G. Keller ("ALJ") held a hearing on April 20, 2010, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 28-47.)  Barry J. Brown, a vocational expert, also appeared and testified at the hearing.  (R. at 47-49.)  On June 11, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-19.)  On May 18, 2012, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-5.)  Plaintiff then timely commenced the instant action.

---

[1]In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged physical impairments.  Accordingly, the Court will focus its review of the medical evidence on Plaintiff's mental impairments and limitations.  *Cf. Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010) (citations omitted) (noting that claims not raised in a merits brief are deemed waived).

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the April 20, 2010 hearing, Plaintiff testified that she stopped working as a medical records clerk in 2006 following a series of workplace injuries and physical issues. (R. at 31-32.) Plaintiff also testified that "taking a lot of medication" had affected her memory. (R. at 41.) By way of example, she indicated that she would have to write down what time of day she put on her medicated pain patches so that she knew when to put on a new one the next day. (R. at 41-42.) When the ALJ specifically asked what impairments should be considered, Plaintiff and her attorney identified only physical impairments. (R. at 28.)

### B. Vocational Expert Testimony

Vocational expert Barry Brown ("VE") testified at the hearing. (R. at 47-49.) The VE indicated that Plaintiff's past relevant work included a medical records clerk classified at the light, semi-skilled level. (R. at 47.) The VE testified that even if Plaintiff was limited to light work with only occasional climbing of ladders, ropes, and scaffolds; and no exposure to dust, fumes, and gases, she would be able to return to her previous employment. (R. at 47-48.) The VE added that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (*Id.*)

When cross-examined by Plaintiff's counsel, the VE confirmed that if Plaintiff was limited to unskilled, one- or two-step tasks due to problems with concentration and memory attributable to chronic pain, she would not be able to perform her past relevant work. (R. at 48.)

3

### III.    MEDICAL RECORDS

**A.    Margaret Smith, Ph.D.**

On November 28, 2007, Dr. Smith examined Plaintiff on behalf of the Bureau of
Disability Determination for an assessment of her intellectual and memory functioning and her
mental status.  (R. at 452-58.)  Plaintiff presented with multiple physical complaints, which she
indicated limited her daily functioning.  Plaintiff emphasized pain complaints throughout her
assessment.  She also reported some mild problems her memory, but noted that "doctors feel it
may be related to the medications she's taking."  (R. at 453.)  Dr. Smith noted that Plaintiff "did
not report more than a mild level of depression."  (R. at 454.)  She observed that Plaintiff's
mood/affect was characterized by depression via tearful responses.  (*Id.*)  Plaintiff reported no
history of psychological or psychiatric treatment or psychiatric hospitalization.

During the mental status examination, Dr. Smith noted that Plaintiff's speech was clear
and intelligible, and her thought processes were logical, coherent, and goal directed.  Plaintiff
was able to "answer[] all questions directly and succinctly."  (R. at 454.)  Dr. Smith found that
Plaintiff had sufficient information, judgment, and reasoning to live independently, make
important decisions concerning her future, and to manage her funds.

Dr. Smith also administered psychometric testing to obtain cognitive and memory
function levels.  Because Plaintiff had been crying and appeared stressed over the testing, an
abbreviated Wechsler Memory Scale-Third Edition was administered.  (R. at 456.)  This testing
revealed that Plaintiff's intellectual abilities fell within the normal range.  The test also revealed
that Plaintiff's intellectual strengths to be her numerical reasoning ability and her short-term
memory and attention.  (R. at 455.)  Plaintiff's total memory composite score fell within the "low

dull normal range," which Dr. Smith noted was slightly lower than expected given Plaintiff's other testing scores.  (R. at 456.)  Dr. Smith noted her concerns that Plaintiff may not have been performing optimally on her memory testing.  (R. at 455.)  In her "Summary and Conclusions," Dr. Smith indicated that it does "not appear [that Plaintiff has] significant memory problems, as noted on [the] testing."  (R. at 456.)  In terms of Plaintiff's alleged mild depression and memory problems, Dr. Smith concluded that Plaintiff's "symptom severity level appears to be in the mild range at about a [Global Assessment of Functioning ("GAF") score of] 65."[2]

Dr. Smith diagnosed depressive disorder not otherwise specified and assigned Plaintiff an overall functional GAF score of 55,[3] noting Plaintiff's allegations that she is extremely limited by her medical conditions.  (R. at 456–57.)  Dr. Smith opined that Plaintiff was mildly impaired in her ability to relate to others; mildly impaired in her ability to understand, remember, and follow instructions; moderately impaired in her ability to maintain attention, concentration, persistence, and pace; and mildly-to-moderately impaired in her ability to withstand the stress and pressure associated with day-to-day work activities.  (R. at 457.)

---

[2]The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34 ("DSM-IV-TR").  A GAF score of 61-70 is indicative of mild symptoms or mild difficulty in social, occupational, or school functioning.  DSM-IV-TR at 34.

[3]A GAF score of 51-60 is indicative of an individual having "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.* at 34.

**B.     Frank Orosz, Ph.D. and Bruce Goldsmith, Ph.D.**

After her review of Plaintiff's medical record on December 10, 2007, Dr. Orosz assessed

Plaintiff's mental condition.  (R. at 460-77.)  Dr. Orosz opined that Plaintiff had mild restrictions

of activities of daily living; in maintaining social functioning; and in maintaining concentration,

persistence, or pace; and no episodes of decompensation.  (R. at 470.)

Dr. Orosz gave weight to the opinion of Dr. Smith.  He also cited her testing scores.  Dr.

Smith ultimately found that Plaintiff's mental condition was currently not so severe as to limit

her ability to work.  (R. at 472.)

On April 17, 2008,  Bruce Goldsmith, Ph.D. reviewed the file and affirmed Dr. Orosz's

assessment.  (R. at 501-02.)

**C.     Jean Vike, M.D.**

Plaintiff saw Dr. Vike for a neurology consultation due to Plaintiff's complaints of

cognitive dysfunction on May 12, 2008, and June 11, 2008.  (R. at 524-28.)  Plaintiff reported

that she had not been able to work for the two years prior to this evaluation due to her neck

condition.  Dr. Vike indicated that Plaintiff was experiencing "severe psychosocial stress,"

explaining that Plaintiff was "very much concerned by the end of the month her disability

insurance will expire and she will have no source of income."  (R. at 527.)  Plaintiff denied

feeling depressed.  (*Id.*)

Dr. Vike described Plaintiff as very anxious and on the verge of tears, noting that she

became tearful on numerous occasions during the examination.  (*Id.*)  She further noted that

Plaintiff appeared to be in pain throughout the interview and that she had significant difficulty

formulating her thoughts and providing a coherent history in a linear and chronologically correct

6

fashion.  (*Id.*)  Plaintiff reported being forgetful around the house.  Dr. Vike reported that

Plaintiff "was able to recall 3/3 items after 5 minutes, performed relatively complex calculations,

and cop[ied] a rather complex design."  (*Id*.)  Further, Plaintiff's neurological examination was

unremarkable.

Dr. Vike indicated that Plaintiff presented with a degree of cognitive dysfunction

manifested by difficulty formulating her thoughts and continuous doubt as to whether she has

completed certain tasks, the later being highly suggestive of severe anxiety.  (*Id.*)  Dr. Vike

further indicated that she did not believe that the medications Plaintiff's took, given their

dosages, would account for her alleged cognitive dysfunction.  Dr. Vike thought that instead,

Plaintiff was distracted because of pain, anxiety, and depression.  (*Id*.)

Dr. Vike obtained an MRI and laboratory testing which was essentially unremarkable.

(R. at 532.)  At the subsequent consultation on June 11, 2008, Dr. Vike discussed at length with

Plaintiff the potential causes of her cognitive complaints and recommended that Plaintiff

increase her Cymbalta.  He added that he believed her mood disorder could be followed by her

primary care physician.  (R. at 524-25.)

## IV.   THE ADMINISTRATIVE DECISION

On June 11, 2010, the ALJ issued his decision.  (R. at 12-19.)  At step one of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantially

gainful activity since her alleged onset date of June 12, 2006.[4]  (R. at 14.)  The ALJ found that

Plaintiff had the severe impairments of neck condition, back condition, hip condition, chest wall

condition, left carpal tunnel syndrome, sleep apnea, and COPD.  (*Id.*)  The ALJ concluded that

Plaintiff's Graves' disease/hyperthyroidism; an esophageal condition referred to in the record as

both an "esophageal spasm" and "nutcracker esophagus"; and fibromyalgia were not severe

impairments.  (R. at 15.)  He further found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  At step four of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC").  The ALJ set forth

Plaintiff's RFC as follows:

> After careful consideration of the entire record, [the ALJ] finds that the claimant
> has the residual functional capacity to perform less than the full range of light
> work as defined in 20 CFR 404.1567(b) in that she has the following abilities and

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

8

limitations: (1) lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; (2) sit, stand, and walk for a total of 6 hours each in an 8-hour workday; (3) climb ladders, ropes, and scaffolds only occasionally; and ( 4) avoid concentrated exposure to dust fumes and gases.

(R. at 16.)  In reaching this determination, the ALJ gave "some" weight to the opinions of the state-agency reviewing opinions of Drs. Willa Caldwell and Leigh Thomas.  (R. at 18.)

The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  (R. at 18.)  The ALJ also addressed Plaintiff's memory problems caused by the medications she took for her physical impairments. (*Id.*)

Relying on the VE's testimony, the ALJ determined that Plaintiff can perform her past relevant work as a medical record clerk as this work does not require the performance of work-related activities precluded by her RFC.  (R. at 18.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 19.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

9

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
*Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

In her Statement of Errors, Plaintiff first asserts that the ALJ erroneously failed to assess the severity of her alleged mental impairments. Within this contention of error, Plaintiff criticizes the ALJ for failing to explicitly discuss her "documented depression," the State agency's consideration of her mental impairment, and her June 2008 visit with Dr. Vike. (Pl.'s Statement of Errors 14, ECF No. 10.) Relatedly, Plaintiff next posits that remand is appropriate

so that the ALJ may consider Dr. Smith's and the State agency's opinions regarding her mental impairment.  In her final contention of error, Plaintiff submits that the ALJ erroneously relied on the VE's testimony given that his testimony was premised upon a hypothetical which failed to accurately capture her limitations attributable to her mental impairment.  The Undersigned addresses each of Plaintiff's arguments in turn.

## A.      Plaintiff's Alleged Mental Impairments

According to Plaintiff, the ALJ erroneously "failed to give any meaningful consideration to [her] mental impairment."  (Pl.'s Statement of Errors 14, ECF No. 10.)  More specifically, Plaintiff complains that the ALJ limited his discussion to [her] alleged memory issues and that he did not mention her "documented depression."  (*Id.*)

With regard to this contention of error, *Little v. Apfel*, No. 99-5778, 2000 WL 658990 (6th Cir. May 10, 2000), is instructive.  In *Little,* as here, the ALJ's decision did not explicitly consider any mental impairments.  *Id.* at *2.  Like Plaintiff, the claimant in *Little* argued that the ALJ erroneously failed to give adequate consideration to her alleged mental impairment.  The United States Court of Appeals for the Sixth Circuit rejected the claimant's argument, reasoning as follows:

> This argument is unpersuasive because  [the claimant] has not pointed to anything in the m edical record which m ight indicate that her ability to perf orm work-related functions was significant ly  limited by anxiety.  *See*  20 C.F.R. § 404.1520(c).  In general, the parts of the record that [t he claimant] cites merely indicate that she had a "history" of chronic anxiety.  There is no indication that she was treated for anxiety or any other mental condition during the insured period. . . . Under these circumstances, there was substantial support for the ALJ's implied finding that [the claimant] did not have a severe mental impairment.  *See* [*Born v. Sec'y of Heath & Hum. Servs.*, 923 F.2d 1168 1182-83 6th Cir. 1990].

> In addition, [the claimant] did not allege a mental impairment in her initial application for benefits or in he r application for reconsideration. There is also

11

nothing in [the claimant's] testimony which clearly indicates that she had a severe mental impairment. Finally, [claimant] did not present a hypothetical question to the VE which included any lim itations based on her anxi ety. Thus, she has forfeited any argument that she might have had with regard to this impairment. *See* [*Davis v. Sec'y of Health & Hum. Servs.*, 915 F.2d 186, 189 (6th Cir. 1990)]; *Brainard v. Sec'y of Health and Hum. Servs.*, 889 F.2d 679, 681–82 (6th Cir. 1989).

*Id*.

Here, as in *Little*, substantial evidence supports the ALJ's implicit finding that Plaintiff did not have a mental impairment impacting her ability to perform work-related functions. Contrary to Plaintiff's assertion, the record hardly establishes any "documented depression" that might impact her ability to perform work-related functions. (Pl.'s Statement of Errors 14, ECF No. 10.) The evaluations of Drs. Smith and Vike upon which Plaintiff relies do not constitute substantial evidence of such an impairment. Per one-time consultative examiner Dr. Smith, Plaintiff "did not report more than a mild level of depression." (R. at 454.) Dr. Smith described the "symptom severity level" of Plaintiff's alleged memory problems and "some mild level of depression" . . . "to be in the mild range." (R. at 456.) Although Dr. Vike, a consulting neurologist, observed that Plaintiff appeared anxious and depressed, she made no more than a passing reference to suggestive anxiety and proffered no mental impairment diagnoses. And although Plaintiff complains that the ALJ failed to discuss the state-agency reviewing physicians' opinions, their opinions likewise fail to support Plaintiff's assertion of a documented mental impairment impacting her ability to perform work-related functions. Rather, Drs. Orosz and Goldsmith, the state-agency reviewing physicians, relying in part on Dr. Smith's evaluation, both agreed that Plaintiff did not have any mental impairments that limited her ability to work. (R. at 472, 501–02.) Finally and significantly, as in *Little*, the record evidence here reflects that Plaintiff was not treated for depression or any other mental impairment. In light of the foregoing

12

circumstances, the Undersigned concludes that the ALJ's failure to explicitly discuss the mental impairment of depression within his decision does not constitute reversible error.

More compelling, Plaintiff, like the *Little* claimant, has waived any argument that she might have had with regard to any alleged depression. *Little*, 2000 WL 658990 at *2. As the Commissioner points out, Plaintiff, who was represented by counsel, did not allege any kind of mental impairment in her application, symptoms report, testimony, or anywhere else.[5] Indeed, at the commencement of the hearing, when the ALJ inquired whether there were any other impairments he should be considering in addition to the physical impairments he had listed, neither Plaintiff nor her counsel identified a single mental impairment. (R. at 28.) Nor did Plaintiff present a hypothetical question to the VE that incorporated limitations attributable to any alleged mental impairment. (*See* R. at 48 (revising the hypothetical to add limitations attributable to chronic pain).) Thus, Plaintiff has "forfeited any argument that she might have had with regard to this impairment." *Little*, 2000 WL 658990 at *2.

In sum, the Undersigned finds no reversible error with the ALJ's failure to explicitly discuss the mental impairment of depression within his decision. Accordingly, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's first contention of error.

---

[5]As the Commissioner points out, at most, Plaintiff alleged that the medications she took for her physical impairments caused memory problems. The ALJ, however, considered and addressed this allegation in evaluating Plaintiff's credibility and determining her RFC. (R. at 16–18.)

13

**B.**     **Drs. Smith, Orosz, and Goldsmith**

The Undersigned likewise find no reversible error with regard to the ALJ's failure to mention the reports of Dr. Smith, a one-time, consultative examining psychologist, and Drs. Orosz and Goldsmith, reviewing state-agency physicians.  According to Plaintiff, these reports "offer opinions regarding the severity and/or limiting effects of Plaintiff's mental impairment." (Pl.'s Statement of Errors 17, ECF No. 10.)  As the Undersigned explained above, however, (1) the record does not contain substantial evidence that would support a finding of a mental impairment; and (2) in failing to allege any kind of mental impairment in her application, symptoms report, testimony, or anywhere else, Plaintiff forfeited any argument she might have had with regard to an alleged mental impairment.  Further, the Sixth Circuit has held that where an ALJ's decision is otherwise supported by substantial evidence, the failure to mention a consultative, non-treating source did not constitute reversible error.  *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005) (no error where the ALJ failed to mention report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (failure to discuss opinion of consultative examiner was harmless error).  Finally, given that Drs. Orosz and Goldsmith, the state-agency reviewing physicians, both opined that Plaintiff did not have any mental impairments that limited her ability to work, the ALJ's failure to mention their opinions in his decision is, at most, harmless error.  (R. at 472, 501–02.)  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's second contention of error.

14

**C.    Reliance on the VE's Testimony**

Within this final contention of error, Plaintiff submits that the ALJ erroneously relied upon the VE's testimony because that testimony "was not based upon an accurate summation of Plaintiff's medical limitations." (Pl.'s Statement of Errors 17, ECF No. 10.) In support of this contention, Plaintiff submits that the ALJ's hypothetical question "did not accurately capture [her] limitations based upon the ALJ's failure to properly consider [her] mental impairment." (*Id.* at 18.) Plaintiff thus concludes that the VE's testimony "is not substantial evidence, and it cannot be used to justify a denial at Step 4 of the sequential evaluation process." (*Id.*)

"In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exist, the questions must accurately portray a claimant's physical and mental impairments." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). In formulating a hypothetical question, however, an ALJ is only "'required to incorporate those limitations accepted as credible by the finder of fact.'" *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) (quoting *Case v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff argues that the ALJ's hypothetical should have limited Plaintiff to "unskilled simple one to two step tasks performed due to problems with concentration and memory," which is the additional limitation her counsel presented to the VE at the hearing and which she asserts results from her mental impairment. (Pl.'s Statement of Errors 17, ECF No. 10; R. at 48.)

Plaintiff's argument is unpersuasive for a number of reasons. First, Plaintiff's counsel, when questioning the VE, attributed the limitation at issue to chronic pain, not to any kind of mental impairment. (R. at 48.) Second, as noted above, Plaintiff did not allege any kind of mental impairment at any stage. At the hearing, she attributed her alleged memory and

15

concentration issues to the medications she took for her physical impairments.  (R. at 41–42.)
Third, in connection with his evaluation of Plaintiff's overall credibility, the ALJ addressed
Plaintiff's allegations that she had difficulty remembering due to the medications she took for
her physical impairments, but concluded that this alleged symptom did not limit her ability to
work.[6]  (R. at 16–18.)  Given that the ALJ did not find the limitations that Plaintiff's counsel
proposed to the VE credible, he did not err when he failed to incorporate them into his
hypothetical question or in relying on the VE's testimony.  *See Case*, 987 F.2d at 1235.

    In sum, the ALJ did not err in relying upon the VE's testimony.  Accordingly, it is
**RECOMMENDED** that the Court **OVERRULE** Plaintiff's final contention of error.

### VII.    CONCLUSION

    From a review of the record as a whole, the Undersigned concludes that substantial
evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED**
that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of
Social Security's decision.

### VIII.    PROCEDURE ON OBJECTIONS

    If any party seeks review by the District Judge of this Report and Recommendation, that
party may, within fourteen (14) days, file and serve on all parties objections to the Report and

---

[6]Plaintiff does not directly challenge the ALJ's overall credibility assessment.  She does,
however, criticize a couple of specific reasons that the ALJ offered for discounting her
allegations of memory problems.  Even if the ALJ's reliance on the challenged evidence was
discounted, substantial evidence (that Plaintiff has not challenged) remains supporting the ALJ's
credibility determinations.  The Undersigned, therefore, declines to disturb the ALJ's credibility
determination.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (holding
that when an ALJ relies on invalid reasons for discounting credibility, it amounts to harmless
error so long as substantial evidence exists supporting the ALJ's conclusions on credibility).

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  July 10, 2013                                    */s/ Elizabeth A. Preston Deavers*
                                                        Elizabeth A. Preston Deavers
                                                        United States Magistrate Judge